AUBUCHON *et al.*, Appellants, v. MURPHY *et al.*, Respondents.

1. A certified copy from the record of a memorandum of sale, not a Spanish archive, executed December 26, 1786, and not recorded before the year 1811, may, under the "act concerning evidence," (R. C. 1845, p. 469, 470,) be read in evidence only upon proof of such facts and circumstances as, together with the certificate of acknowledgment or proof, will satisfy the court that the person who executed the instrument is the person therein named as grantor.

*Appeal from St. Louis Court of Common Pleas.*

This is an action in the nature of an action of ejectment, by plaintiffs, Aubuchon and Vallé dit L'Anglais, to recover an undivided portion of a tract of three by forty arpens, in the Grand prairie common field of St. Louis. The plaintiffs claim title under the widow Hebert, to whose representatives it is alleged the said tract was confirmed; L'Anglais claiming an undivided one-tenth of said tract by descent from her, and Aubuchon, the other plaintiff, an undivided one-fifth of the same, as having purchased the said interest from other heirs of the said widow Hebert. The defendants denied plaintiffs' right of possession or title, set up title in themselves, and state that the most southern one of the three by forty arpens had been conveyed by widow Hebert to Labuxiere in 1777, and that the two northern ones had been sold at the church door before December, 1786, by Charles Sanguinet, as testamentary executor of widow Hebert. Defendants claim title by virtue of the said conveyance and sale, and further allege that they, and those under whom they claim, had had possession of the tract sued for for more than twenty years prior to the commencement of this suit. On the trial, plaintiffs introduced in evidence the concession to the widow Hebert and the confirmation to her legal representatives, and the United States survey thereof, being survey No. 1256, and also introduced evidence tending to prove a derivative title in plaintiffs under the widow Hebert.

Defendants introduced evidence tending to show a derivative title in themselves, from the widow Hebert, through a conveyance from her to Joseph Labuxiere, dated July 9th, 1777, of the most southern of the three lots. The defendants then offered in evidence archive No. 2389, a translation of the material parts of which is as follows : " No. 2389. In the town of St. Louis of Illinois, on the 30th day of November, in the year 1784, in consequence of the decease of Helene Danis, widow of Ignace Hebert, deceased, who (widow Hebert) died intestate in

this said town, on the 28th day of the present month, I, Don Francisco Cruzat, lieutenant colonel of infantry, commander-in-chief, and lieutenant governor of the western part and district of Illinois, went at about half-past nine, A. M., of that day, to the residence of the aforesaid deceased, accompanied with the assisting witnesses, Mariano Yzayuirre, and Josef Barnes, to make the inventory and appraisement of all the property belonging to the said deceased; for that purpose have been selected and officially appointed as appraisers, Sylvester Sarpy, Charles Sanguinette, Joseph Motard, and Pierre Perry, who promised on oath faithfully and lawfully to perform the duties of that office, and every thing being valued in money, the present inventory was commenced in the following manner : One and a half arpens of land in front by forty arpens in depth, situated in the Grand prairie, between the cultivated lands of Louis Chevalier (Cheballier) and Joseph Brazeau, valued at twelve livres (12). [There were numerous articles enumerated, which it is unnecessary to set forth.] And after having proceeded with the inventory from three o'clock, P. M., to half-past five, P. M., as nothing more was found belonging to the estate of the said Helene Danis, deceased, the present inventory was closed, it being written on eleven leaves, including this ; the appraisement amounting to the sum of six thousand three hundred and thirteen livres fifteen cents, and all the aforesaid property was placed under the care of Charles Sanguinette, to keep and preserve it under the strict obligation to divide among the lawful and nearest heirs of the aforesaid deceased, with judicial authorization and according to the rights of every one, the property of the said (widow Hebert) as enumerated in this inventory. He accepted of this charge and swore to fulfil the duties of it in a faithful and lawful manner, considering that he was officially instructed with it for the object so mentioned ; therefore he signed this inventory in the presence of the assisting witnesses and of the said appraisers, who signed also with myself, the said lieutenant governor, on the same day and year

as above.   Chs. Sanguinet, Pre. Peri, Josef Bermeo, Joseph Motard, Mariano Yzayuirre, Franciso Cruzat, Stre. Sarpy."

"To the lieutenant governor: Sir — Charles Sanguinet, a merchant of the town of St. Louis, in the best form, according to law, represents to you, as administrator, officially appointed, and having under his care the property belonging to the estate of the deceased, Helene Danis, that it is advantageous to the heirs, some of whom are under age, that all the property be sold at public sale, to the highest bidder, and that the purchasers having given a good and sufficient security, residing in this town of St. Louis—the term of payment for all the purchasers at the end of September, in the year 1785; I therefore beg you to order and decree according to my demand, which is just, and I swear, in due form of law, that it does not proceed from any evil design, &c.   St. Louis of Illinois, December 11th, 1784.   Chas. Sanguinet."

"Considering the foregoing petition, let the object of said petition be granted, and let the morning of the 13th inst. be indicated for the beginning of the sale; let this be made known to Charles Sanguinet.   St. Louis of Illinois, December 11, 1784.   Franc°. Cruzat."

"In the town of St. Louis of Illinois, on the 13th day of December, 1784, I, Franc°. Cruzat, commandant and lieutenant governor of the western part of Illinois, in virtue of the foregoing petition presented by Chas. Sanguinet, as administrator, and having in his possession the property which has been inventoried as belonging to the deceased, Elena Danis, I went at about 10 o'clock, A. M,, accompanied *with* the assisting witnesses, Mariano Yzayuirre and Josef Bermeo, to the residence of said deceased, to dispose at public sale all of said property; and when a sufficient number of people had collected, it was made known to the public that the purchase money should be paid during the month of September of next year, 1785, in current money of this country, or in shaved deer-skins, of merchantable quality, at the rate of forty sous a pound, each pur-

chaser to give a good and sufficient security residing in this town; and after having proceeded with the sale from three o'clock, P. M., to five, there being no more effects of said estate to be sold, the present sale has been terminated (the minutes of which cover sixteen leaves, including this one,) and the pro-ceeds amount to the sum of 10,907 livres and 10 sous in money, payable in the course of September of next year, 1785; and the said assisting witnesses and administrator have signed with me, the said commandant and lieutenant governor, on the day and month and year aforesaid. Chs. Sanguinet, Josef Bermeo, Mariano Yzayuirre, Franc°. Cruzat."

To the reading of this paper in evidence the plaintiffs objected, because, 1st, not filed in the cause as an exhibit; 2d, not properly authorized; 3d, incompetent and irrelevant. But the court admitted the paper, and plaintiffs excepted.

Defendants then offered in evidence a certified copy of a memorandum of sale, recorded in the recorder's office of the county of St. Louis, on the 18th June, 1811, as recorded in the original record, in book C, p. 396, and the acknowledgment as recorded at p. 401 of the same book, which is as follows:

"27 Jan. 1785. Nous, Louis St. Ange de Bellerive, capitaine commandant de la partie Française aux Illinois, et Joseph Labuxiere, sub-deleguée de monsieur l'ordinnateur de la Louisiane, et sur la demande de la dame veuve Hebert, habitante laboreuse qui désire cultiver la terre nous lui avons concedé et concedons à titre de proprieté pour elle ses hoirs on ayant causes, une terre située à la Grande prairie, contenante trois arpens de face sur le profondeur ordinaire de quarante arpens, tenant d'un côté à Guillaume Bisete, et de l'autre côté au nomm´e Taillon, aux conditions de mettre en valeur la ditte terre sous l'an et jour, et qu'elle sera sujette aux charges publiques et autres qu'il plaira à sa majesté d'y emposer. Donné à St. Louis aux Illinois, le dix-huit Juillet, mil sept cent soixante-neuf. Signé sur le registre—St. Ange et Labuxiere. Enregistré folio 28. J'ay, éxécuteur testamentaire de madame Helene Denis, veuve Hebert, reconnais et certifis d'avoir vendu

à la porte de église a la *criée auplu aux en cherisseur* [?] la presente *tarres* que de deux arpens à Mr. Joseph Brazeau pour prix et somme de quarante livres en argent, dont je reconnait que de Sr. Brazeau m'a payé comptant, dont quit à St. Louis des Illinois, le 26 Décembre, 1786. Chas. Sanguinet." " Recorded this 18th day of June, 1811. M. P. Leduc, recorder."

" State of Missouri, county of St. Louis, ss. I, the undersigned, recorder in and for the county of St. Louis, do hereby certify the foregoing to be a true copy of an instrument of writing, and also of the date of recording the same, as fully as the same remains of record in my office, in book C, p. 396. Witness my hand and official seal, at St. Louis, the 28th day of January, 1852. S. D. Barlow, recorder. (Seal.)"

" See p. 396. Territory of Louisiana, district and township of St. Louis. Before me, the subscriber, one of the justices of the peace in and for the township aforesaid, personally came and appeared Charles Sanguinet, who acknowledged the within instrument, to-wit, the deed bearing date the 26th December, 1786, to be his act and deed for the purposes therein contained. Given under my hand this 29th day of June, 1811. M. P. Leduc, J. P. Recorded this 29th day of June, 1811. M. P. Leduc, recorder."

" State of Missouri, county of St. Louis, ss. I, the undersigned, recorder in and for the county aforesaid, do hereby certify the foregoing to be a full and complete copy of a certificate of acknowledgment, of the reference in the margin, and of the date of recording thereof, as fully as the same remains of record in my office, in book C, p. 401. Witness my hand and official seal at St. Louis, the 28th day of January, 1852. S. D. Barlow, recorder. (Seal.)"

The defendants also offered, in connection with the said certified copies, the index of said record book, as follows, and also the first volume of the general index of said recorder's office of St. Louis county; also the record books themselves; to all which the plaintiffs objected, because, 1st, said papers had not

been filed in this cause ; 2d, not properly authenticated ; 3d, not originals, but copies, and copies of copies ; 4th, imperfect and incomplete ; 5th, incompetent and irrelevant and illegal. The court below admitted this paper, and the plaintiffs excepted, and took a nonsuit, with leave to move to set the same aside ; which was accordingly done in due time, and this motion was overruled, and plaintiffs excepted.

Defendants claimed to derive title under the said two instruments to the two northern of the three by forty arpent lots, and introduced evidence tending to show a derivative title to them from Joseph Brazeau.

*T. Polk,* for appellant. 1. The copy of the record of a a paper purporting to be a deed or memorandum of sale from Charles Sanguinet to. Joseph Brazeau, dated Dember 26th, 1786, ought to have been excluded from the jury. It was not filed in the cause. (Code of Practice, art. 7, § 13.) That which was offered was either a copy of the original memorandum of sale (the record itself) or a copy of a copy of the same. The original ought to have been produced or its loss or destruction shown. (1 Stark. Ev. 336 ; R. C. 1845, p. 227.) This memorandum was not admissible under either the 13th or 14th sections of the act concerning evidence. (R. C. 1845, p. 469.) It was not an archive : this is admitted. If it be treated as an American instrument, it was not entitled to be recorded at the time of the record, June 18, 1811, because not acknowledged. (1 Terr. Laws, 47, 58, 179.) It was not acknowledged until June 29, 1811, and then the certificate of acknowledgment, and not the deed, was recorded in a different place in the record book ; never having been recorded together as one instrument, and consequently was not admissible under either the 16th, 17th, 18th or 19th sections of the act concerning evidence. (R. C. 1845, p. 469, 470.) The sale to Brazeau by Sanguinet, as set forth in above memorandum, was not authorized by the order of the lieutenant governor, as contained in the paper purporting to be archive No. 2389. The date of

the memorandum is more than two years after the time fixed by the order for the sale.

*Field* and *Shepley*, for respondent. 1. The court properly admitted in evidence the memorandum of sale by Sanguinet, as administrator of widow Hebert. It was admissible under the 18th section of the act concerning evidence. (R. C. 1845, p. 469.) It was admissible also on the ground that it is a document from which, after the lapse of time and other cir-·cumstances, the jury might presume a judicial sale. (1 Cow. & Hill's notes, 386 to 371.) It was at least good evidence of ·a color of title, upon which to base a title by virtue of the statute of limitation, and as showing the extent of the possession. See 6 Metc. 337 ; 5 Metc. 15, 173. It was no objection to its admissibility that no testimony was offered to prove the loss of the original, it not being an instrument that is supposed to be in the possession of defendants ; the admission of a copy was wholly within the discretion of the court. Nor is it an objection to its admissibility that the deed and the acknowledgment were recorded at separate places in the same book ; nor is there any discrepancy between the order of sale in the inventory and the facts as stated in the memorandum of sale. The memorandum does not show when the sale was made. If any discrepancy exists, it does not affect the question of the admissibility of the memorandum.

LEONARD, Judge, delivered the opinion of the court.

The written memorandum of sale by Sanguinet is treated by both parties as an American instrument, and of course it has not been insisted that the copy was competent evidence as a certified copy of a French or Spanish archive, under the act of 16th February, 1847, "to preserve ancient archives." The only question therefore is, whether it was admissible under the act of 1845, concerning evidence. The plaintiff objected to the instrument for want of proper proof of authenticity, and insists

Aubuchon v. Murphy.

here upon every objection that he is entitled to make. If it had been the original instrument, instead of a copy, we think it should have been excluded for want of the proof of the grantor's identity, required by the 18th section of the act of 1845, concerning evidence, and that for this reason the judgment must be reversed. We incline to think that, notwithstanding the other objections that have been taken to it, the paper might have been received as a certified copy, under the 19th section of the act, upon such proof as would have satisfied the court of the grantor's identity ; but no such proof was made, and the objection is insisted upon, and we have no power to dispense with it, however merely formal it may be in the particular case.

Very considerable changes have, from time to time, been made in our registry laws. Before the act of December, 1821, no proof of the grantor's identity was required, and neither recorded deeds nor certified copies were authentic instruments of evidence until the act of 1825. This act allowed deeds, proved and recorded under it, and certified copies, to be read in evidence upon the proof there required. Subsequently, the legislature went a step further, and provided in the 17th section of the act of 1845, before referred to, that all conveyances proved or acknowledged according to the existing law, although not declared to be evidence, should be received in evidence, if they had been recorded within one year from the date (the time prescribed by the first law of 1804, for the registry of deeds, and subsequently reduced to three months by the act of 1817,) and more than twenty years before they are offered in evidence, thus substituting in lieu of the proof of identity required by the act of 1821, what the legislature deemed equivalent proof — a registry made recently (not exceeding one year) after the execution of the deed, and twenty years' exposure to the public upon the records of the proper county. In the subsequent (18th) section, they go yet further, and provide for deeds that do not carry with them this evidence of authenticity, and allow them also to be read, although not recorded within one year, and more than twenty years before the trial, upon such facts,

as, together with the certificate, will satisfy the court of the identity of the grantor; and in the succeeding (19th) section, if the original is lost or destroyed, or not in the power of the party, a certified copy may be received upon the same evidence required in case of the original.

This is the law, and if a party desire the benefit of its provisions, he must make the required proof—we cannot dispense with it. The judgment is reversed, and the cause remanded.